at all or arguments not to exceed 15 minutes per side. Mr. Richard Bruss for the Plaintiff Appellant. Good morning. I want to please the court. I would like to reserve three minutes for rebuttal. All right. The owners agreed to allow AEP to rent their $1.7 billion power plant for 33 years with really two major conditions. Number one, AEP has to pay the rent. Number two, AEP can't do material harm to the plant or to the owner's long-term interests in it. AEP violated the latter condition by trading away the long-term value of the plant in order to obtain a more favorable settlement of claims brought by the government and others against its interests elsewhere, claims that could not have had any effect on the plant itself. The only question in this case really is whether there's something else in the agreements here that would excuse that violation. The district court held that there is. The district court held that because AEP accomplished this result through a consent decree, the $1.4 billion encumbrance that it put on the plant is a permitted lien, which means an exception to a separate prohibition against liens. And it read that exception to give AEP an affirmative right. That was error. It was error for two reasons. Number one, a consent decree is not a permitted lien. And number two, even if it were, this consent decree, which materially adversely affected the plant and the owner's long-term interests, violated Section 6.01J of the participation agreement. How would this case have worked if everything about it is the same but Rockport II is part of the underlying lawsuit and then the same consent decree? And let's just say to make it easier that the original consent decree says the 2028 requirement, in other words, not the original. So just in terms of trying to figure out what the agreement does in terms of protecting lessee, lessor, owner's, AEP's interests, how does it work? Is it this? Sure, Your Honor. I think actually it's a – thank you for asking the question. I think it will frame the case wonderfully. So if the lawsuit were about potential violations of law, essentially the violation was constructing major modifications to the plant without getting a permit and putting in a scrubber. If it were about this plant, if the lawsuit went to judgment and AEP were to lose that case, it would have violated the law, which would violate Section 8A of the facility lease, which is at page ID 3390. That provision says that the lessee shall comply and shall cause the operator to comply with all of the lessee's obligations under applicable law affecting Unit 2. So they would be responsible for any – for the cost of the scrubber and for any other harm that came to the owners from doing that. On the other hand, if AEP had litigated that case and won, well, then it would have paid its litigation costs. But what about the consent decree, though? It would not have – So just to make sure I'm getting it, they lose the judgment. In that case, the owners have no obligation. Everything else goes the same. It's AEP's responsibility. So now you have this – what do you want to call it – consent decree or settlement, whatever. How does the agreement work there? I don't think it changes the fact that AEP is responsible for whatever the costs of the consent decree are because that's a voluntary action on AEP's part. In other words, if AEP wants to agree that there will be a – for instance, if AEP itself wanted to put in a scrubber, it wanted to make a major modification that then required a scrubber, that would be something it could do under Section 8C, but it would have to pay for it. And actually, the oddity here is that we would end up owning it because a voluntary scrubber would be a non-severable modification. You say under 8C it has to pay for it in that setting. That's because it's a modification and it has the language at its expense. That's what you're – Exactly, because it would be – because for a business reason, it believes it desirable to put that modification in, and that modification led then to the requirement to put in a scrubber. And under 8D, Your Honor, 8D provides sort of who owns the modifications after everything is over, and 8D would provide that because it was a non – because a scrubber by its nature is a non-severable modification, unless it's required by applicable law, here it wasn't required to begin with. They made it required by their conduct, putting in a – modifying the plant. We would at that point actually have title to it. That's under 8D, small 3. But getting back to Your Honor's question about the consent, you know, whether the consent decree or settlement in that example would be a permitted lien, the answer is it would not, for the same reasons, frankly, that in this case it isn't. If we look, that's both a matter of the language of the permitted lien definition in Clause 10, but also of the context in which Clause 10 comes, both in the overall agreement, but specifically in the list of permitted liens. I'll start with the language, if that would be helpful. As a matter of language, what Section 7, which is the anti-lien provision, says, is that AEP shall not create, incur, or suffer to exist any lien except permitted liens. Then we define permitted liens. Clause 10 says that a vested or reserved right in a government authority to regulate – to appropriate, to condemn, to regulate, or control the plant. We don't believe, first of all, that the syntax of you don't normally create, as a private party, a reserved or vested right in the government. We think that's an unnatural view of it. We think that what the clause is most naturally read to be talking about is actions by the government, unilateral actions by the government to regulate or control. And it quite logically is in there because AEP shouldn't be found to have violated the anti-lien provision merely from suffering to exist something that it can't do anything about, which is the government has imposed a new obligation. But that wouldn't be the case here with Your Honor's example. Here, the burden or the lien that's been put on the plant is a burden or lien that's been put on the plant by AEP's voluntary contract with the government. So, no, we don't – But I guess one way of thinking about it, that would be true particularly if Sierra Club was the only plaintiff. That's right, Your Honor. Or is the fact that Sierra Club's relying on federal law change it? I don't think it does, Your Honor. No, and I don't even think AEP is arguing otherwise. The other interesting thing I think to look at is even if you thought the language were something that could reasonably go either way, if you look at it in context, it really can't. Because if you look at the list of permitted liens, they're really carefully defined. The parties – I thought this agreement was really quite carefully crafted. And particularly this part, if you look at it, the permitted liens fall into three categories. One, preexisting liens. Two, liens that AEP can do nothing to avoid. So this would be, for example, liens that are created by the transaction documents themselves or liens that are created by unilateral government action. Three, there are liens such as mechanics liens, such as liens for putting in new repair parts. Those would be Clause 5, Clause 6, Clause 15, and Clause 16 liens. Those liens are all carefully circumscribed. There are actions that AEP can take to create a lien, but there are lots of limits in each of those definitions that protect the owners from those liens being too material. So for mechanics lien, for example, it's got to be something that arises in the ordinary course of business and is paid within 30 days or is bonded. Another example, the repair liens. Those are ones that have to be paid off within a certain amount of time. The oddity of their argument here is that there's a glaring exception to this careful scheme in Clause 10. Clause 10 allows them to create a lien of enormous materiality with no limits on it whatsoever, so long as it does it in the form of a settlement that's blessed by a consent decree. One other feature of this case, I can understand why your clients didn't pay attention to the initial consent decree because it was in their interest, but I take it they were notified about the modification of the consent decree, and I guess in terms of the unfairness of this is the fact that they had notice of this and opportunity to intervene. Balance that out is, I guess, the question. I don't believe so, Your Honor, because the consent decree provides quite specifically that, and this is at page ID 3515 and it's paragraph 208, this consent decree does not limit in large or affect the rights of any party to this consent decree as against any third parties. So when they did it, we had no reason to disrupt the relationship between AEP and the government and the private plaintiffs. Whatever environmental concerns or public concerns that were involved were really not our business. Our business is between us and AEP as to who has to pay for that. And so it wouldn't really have been a reason for us to have to go up and object to the court not don't do this modification. It's a reason for us to go to AEP and say, well, you've done this modification. You don't seem to have any desire or intent to build the scrubber yourself and to take on the expense yourself, and now we have a problem with you because you've breached the contract. Your Honor, even if, by the way, we got past, and I don't think you can, their unnatural reading of the language and the fact that it doesn't really work. Just out of curiosity, maybe you have no idea. What happens if you're right, you win, you win as a matter of law, now is the consent decree undone? No. No, it will not affect the consent decree one iota, Your Honor. Should it be AEP's duty? What's that? It would just become AEP's? Exactly. That's all it would become. And two other points, I guess, about their interpretation of permitted lien, if I may. One is that it creates, as they've interpreted it as an affirmative authorization, an unnecessary conflict with Section 601J. By interpreting it as an authorization and by interpreting it even to authorize materially adverse actions on AEP's part, it runs straight into 601J, which says AEP can't take any action that would have a materially adverse effect. On the other hand, if you read the permitted lien provision instead to ---- Are there other permitted liens that you would agree are okay, that are likely to run up against Section 6? No. No. By their very nature, Your Honor, they're all, as I said, of the ones that AEP can cause itself, to be clear. I mean, the government, of course, could come in with a law tomorrow that shuts down power plants, and AEP is permitted to suffer that to exist. Well, it can't do anything about it. But of the ones that AEP can create itself, no, we think it's very unlikely that any of them, based on the circumscribed nature of the definitions, would materially adversely affect the plant. How about as you get close to the end of the lease? As you get close to the end of the lease, isn't it likely that some of those will carry over and become owner problems under Section 6? They may become owner problems, Your Honor, but, again, we're talking about material adverse effects on the owner's long-term interests. And, no, we don't think, given the value of the plant, even under AEP's view of what the value of the plant will be at this point and that they've low-balled it, but even under that, you're talking about several hundred million dollars worth of plant that we're supposed to be inheriting at the end of the lease. And, no, if you look at the definitions, none of them are likely to have that effect. By the way, if they did, we think 601J is an overarching provision that would prevent them from doing it. But we actually think it's unlikely. And that, as I've said, factors into how you ought to read 10, because 10 shouldn't be read as the one that somehow gives no protection at all to the owners against AEP's voluntary actions. Finally, I guess it's a rare case. I've done a lot of contract work, and it's a rare case where the precept or canon of avoiding commercially unreasonable results comes into play in such a clear-cut fashion as it does here. Under AEP's view and under the district court's view, AEP could have agreed that this plant would shut down the day after, without any ability to even put in a scrubber, would have to simply be shut down the day after AEP's lease ends, and that would be perfectly okay. There's no way that the owners agreed to allow AEP to destroy their residual value in that way, and this case isn't far off of that. This case puts the date out a bit and allows us the option of putting in a $1.4 billion scrubber. Now, mind you, this whole plant was purchased for $1.7 billion, so the idea that the plant would still be economic if you did that is fanciful. The real effect of what they've done is to require that the plant shut down in 2028. Secondly, as Your Honor and I discussed earlier, if AEP had been accused of violating the law and indeed had violated the law at this plant, AEP undoubtedly would be responsible for paying the costs of that. It's a truly perverse world when AEP is somehow better off because the law, it's accused of violating the law at plants that we have nothing at all to do with, and we can be stuck with the costs of having to remediate that. So if there were any doubts, and I don't think there should be, about the appropriate construction of any of the language here, so long as our construction is a reasonable one, the law would require that it be adopted. All right. Counsel, your other claim is the New York claim of breach of the covenant of good faith and fair dealing. Do you concede that that claim is based upon the same facts as your breach of contract claim? Absolutely, Your Honor. What's your best New York authority that you can bring such a claim based upon the same facts for a breach of contract claim? I know you're saying you're pleading them an alternative, but what's the best New York case I can look up to see that that is a viable claim? Certainly, Your Honor. We have cited a couple of cases in the brief that address it, but let me find it. The best case is Elmhurst Dairy, Your Honor, versus Bartlett Dairy, Inc. It's cited at page 23, and Hersh Food versus Resources. But let me qualify that, if I can indulge. None of the cases that are cited by either side really delve into, in a serious way, the question of whether that substantive rule, that so-called substantive rule, really is a rule of substance or really is a rule of procedure. And if it's a rule of procedure, whether it has to give way to the rules of procedure either in the state or federal. Secondly, even if they were right about the state, it wouldn't matter. Under Erie, the federal rules of civil procedure trump any contrary state rule. And we know from the Supreme Court explaining it, and of course it's common sense, that there's a very strong presumption that the rules in the federal rules of civil procedure are procedural. As the Supreme Court explained in the Hanna case, and I'm happy to give you the site if you'd like, but as they explained in that case, it's 360 U.S., 480 U.S., 460, and the jump sites are 470 and 471. What the Supreme Court said is you'd have to assume that the advisory committee, the Supreme Court, and Congress all wrongly felt that something was procedural, all wrongly concluded that. There's a very strong presumption against it. And, of course, in this case, we know it's not procedural because the New York rule doesn't say you can't plead implied covenant of good faith and fair dealing if you would have lost on an express claim. What it says is you can't plead it if you pled an express claim. So it's expressly dependent on what you pled, not on substance. And, therefore, the Rule 8 has to apply. And it's an alternative claim as well as an alternative appeal. That's right, Your Honor. It doesn't matter if you're right on the first, your major point. That's correct, Your Honor. Thank you. Thank you. May it please the Court, David Ellsberg for the appellees who I'll refer to collectively as AEP. Your Honors, under the contracts here, the owners are getting paid about $4.8 billion plus substantial tax benefits. And under those same contracts, they agree to clear terms that foreclose the claims that they're making here. The very narrow question on this appeal is whether the consent decree violates 601J, even though it's expressly permitted by Section 7 and the definition of permitted liens. I intend to first address Section 7, then 601J, and then, finally, I'll address the argument that we just heard today. What limits are there to your argument? Could they have said not just scrubbers, but we're really going to overhaul this plant? We're talking now solar panels and wind turbines. I mean, are those all on the table under your interpretation? No, no, absolutely not, Your Honor. And that's a very important part of this appeal because what they did with their argument, especially in their reply brief, is they act as if Judge Sargas held that there are not limits on what AEP can do here, including with respect to entering into consent decrees. And that is not at all, Judge Sutton, what Chief Judge Sargas held. And the owners, frankly, know better. Just to give a couple of examples of what really happened here. What would the limits be? I'll give you a list of limits. I'll give you a list of limits. So, for example, the prudent utility practice clause, which is in Section 8 of the agreement, specifically says that AEP is required to do two things. Number one, AEP has to treat Rockport, too, in the same way as other utilities treat their plants. So there's an industry practice consistency requirement. And number two, the prudent utility practice clause specifically says AEP, and this is critical, Your Honors, AEP must exercise its discretion, its judgment reasonably, including in dealing with governmental authorities. And in the same decision in which Chief Judge Sargas said, I'm dismissing the claim under 601J, he said, I am letting the prudent utility practice claim go forward. I'm not dismissing it. And then the owners chose to voluntarily dismiss that claim with prejudice. And, Your Honor, this brings up two things that Your Honors asked about during the other argument. Number one, the implied covenant claim. By voluntarily dismissing the prudent utility practice claim with prejudice, they also dismissed the substance of their implied covenant claim with prejudice, because the provision, again, specifically says exercise judgment reasonably. And you can see the definition of prudent utility practice on page ID 4. You can see what the owners argued about prudent utility on page ID 4900, what Chief Judge Sargas wrote about it on page ID 8381 to 83, and their stipulation of dismissal on RE220. Usually the point of an implied covenant of fair dealing is that it's implied and not expressed. You say because they dismiss an express claim that an implied claim is dismissed as well? Yes. Does that make any sense? Yes, it makes a lot of sense, Your Honors. That's exactly what happened in the Second Circuit decision, the Cruz case, which we cite, where the court explicitly noted that the contract clause, the express contract clause, encompassed obligations that were similar to the implied covenant claim. And, of course, we also cite the case law that says you cannot have an implied claim that is inconsistent with what other terms, for example, what Category 10 of the permitted lien provision says here. And, Your Honors, it's not – Is this case different if only the Sierra Club had brought it? Your Honors – Does it come out the same way or differently? Everything else is the same. If the – there is an argument that it would come out the same way. That's not the argument that – Just tell me the answer. I'm giving you a question. Sierra Club is the only litigant. Same consent decree. Same outcome or not? I would say yes, there could be the same outcome. It would be a tougher case, but there is a reason it could be the same outcome, and that's because if a private litigant brings a claim under the Clean Air Act, as Judge Sutton, I think you might have been alluding to earlier, the Clean Air Act is a regulatory scheme that specifically makes private litigants private attorney generals, and the court, under the language here, which talks about a governmental authority vested with rights reserved to it, the court is a governmental authority exercising a right reserved to it. However, this case is much easier because here what you have is undisputedly, clearly, a governmental authority, which was the EPA. The EPA's right to bring Clean Air Act lawsuits is vested in it by 42 U.S.C. 7413B. Under 7413G, settling suits and entering into consent decrees is explicitly identified as an enforcement power of the EPA. The title of the section is Federal Enforcement. So does the record show whether AEP consulted with the owners before it modified the consent decree? Not the original one because I think you can make the argument that really didn't prejudice them, but the modification. Does the record reflect that? Your Honor, I believe that it's undisputed that the notice of – I knew about the notice, but I'm asking a phone call. No, Your Honor. Here's what we're doing. This is worth $1.8 billion. We can imagine you maybe not being that happy about it, but here's why we're doing it, and we kind of feel we're in a tough spot. If we don't, we'll get sued anyway, whatever the explanation was. That didn't happen. There's nothing in the record that shows that happened. I do believe it's undisputed that they did receive notice, and they don't deny that they were aware of it. Did you agree with your friend on the other side that if they end up being right, it doesn't upset the consent decree, or does it upset the consent decree? No, Your Honor. The reason that there would be an issue with the consent decree, and this is on page ID 1796 in one of Chief Judge Sargis' decisions, is the consent decree, and I'm quoting, prohibits the sale or transfer of operational or ownership interests in units covered by the consent decree to third parties unless the third parties agree to be bound by its terms. So there was an aspect of this. What they're really doing, part of what they're – I don't know. How could you have that language and not talk to the $1.8 billion entity? That's astonishing to me. You're going to say that's there to cover the possibility the whole consent decree gets blown up because they're going to object. No. What I'm saying, Your Honor, is that under the contract, even if – Contract being the consent decree. No. Okay. Sorry, Your Honor. What I'm saying is that under the contracts here, consent decrees are permitted. Even if they had objected, it wouldn't have altered the rights under the contracts here. And under the contracts here, because there was a governmental authority – I guess I'm not understanding your answer. If they're right on construing the contract between AAP and the owners, does that upset the consent decree? And I thought you started by saying, yes, it might for this reason. Did I misunderstand you? No, no, no. I'm sorry. It wouldn't. It wouldn't upset the consent decree. You agree with your friends on the other side. What I'm saying is that they are – because they don't have these rights under the contracts that they're claiming, because they don't have these rights, there was no need to call them up and say, hey, listen, just want to let you know we're exercising our rights under the contract. I'm asking just a different question. The question is counterfactual from your perspective. They do have the rights they've alleged. This was not lawful. Therefore, at a minimum, they can come after AAP as they have in this lawsuit. I'm asking whether if they're right when it comes to the contract between you, AAP, and the owners, what happens to the consent decree? They said nothing. Do you say nothing? If they are right about interpreting the contract between AAP and the owners, does that alter the consent decree or upset it or nullify it or something? I guess it would depend on what the remedy is that the court granted. If their complaint is that there can't – Maybe AAP has to pay the $1.8 billion. No, that would not upset them. That remedy would not upset the consent decree. Okay. All right. That's what I was asking. Sorry. Thank you. Now, your honors, I've already gone through why it is that this was a right vested in the EPA to regulate or control Rockport II in any manner. This is a right that was vested by the Congress in the EPA, and entering the consent decree was a right vested to it in any manner. The owners argue that AAP engaged in voluntary conduct, and they say engaging in voluntary conduct supposedly takes the consent decree outside of the coverage of Section 7, but they're wrong about that. Section 7 does not limit itself to conduct that is involuntary, and to the contrary, Section 7 uses the words create and incur. It says AAP shall not create or incur or suffer to exist liens except permitted liens, and as Chief Judge Sargis recognized, the word create specifically refers to conduct that AAP engages in that is voluntary. Now, Chief Judge Sargis also got it right when he held that Section 7 and the definition of permitted lien is more specific than 601J, and it therefore trumps. 601J is a single sentence. It only addresses material adverse effects on the highest level of generality. It just says no MAEs. By contrast, Section 7 and the definition of permitted lien is about a page long, nearly a page long, 17 subsections, and it specifically addresses a lien like the one here, which is created when you have a governmental authority that vests rights in it to control or regulate Rockport II in any manner, and I would point out that the owners don't dispute the principle that the specific trumps the general, which is fatal to their claims here. Now – I asked you before what is – maybe you understood it this way. One possibility is Sierra Club, a private entity, sues Rockport II, and how does this work? Would it change things if Sierra Club sues a different AAP plant, but then part of the consent decree is Rockport II? I take it none of that really changes your answer. You're kind of back in the same territory. It's a harder case for you, but you still think you would be able to win. I think – well, I think it's a harder case. Right. I do think it's a harder case, and I would just like to address a couple of things that came up when your honor asked questions. So just – Yes. Well, I want you to get to that, but just – one thing I just want to make sure you address is just the kind of very natural intuition without parsing contracts, which is pretty complicated, just that shouldn't consent decrees mainly relate to the subject – the plants that are subject to this lawsuit? And when you're modifying things to unload burdens onto non-involved parties, it just – there's something that doesn't sound right about that, and maybe you don't think so, but I'm going to guess most people would say that doesn't seem right. And how do you take that on? This is how I take that on. First of all, with the plain language. So they had it coming to them. They agreed to this. Well, yes. They did agree to this in the plain language. But another way – so first of all, again, governmental authority exercising power vested in it to control or regulate in any manner. That's the language that they agreed to. And again – But you talked about power vested in it, but you're talking – this is permitted liens vested in government. Yes. Which is different than a power, isn't it? Well, sorry, Your Honor. A vested lien sounds like it's a lien in the past tense, not a lien that could be created in the future. I think that's what their argument is, that you look at the tense here of vested and reserved as to determine whether the lien was in effect at the time of the contract. And their argument is no, it was created later. Yes, Your Honor. How do you get past that point? Here's how. There are two pieces of that. So it is correct, as Your Honor says, that Category 10 refers to rights vested in governmental authority. The right to enter into this – This is in the lien section, though, right? Yes. Okay. So we're not really – we're not necessarily talking about rights. We're talking about liens, are we? Well, this is in the definition of what a permitted lien is. Permitted liens. Yes. So a permitted lien, by definition, includes rights vested in a governmental authority. And there was a preexisting right vested in a governmental authority under 42 U.S.C. 7413B to – The extent of that right of the governmental authority was not clear that it included this scrubber back when the contract was made, was it? Yes. It was? Yes, it was. And I would say that's clear in a couple of places. One is Section 8 of the contract specifically recognizes a scrubber may be required by applicable law, and applicable law includes a decree. And there's no dispute that a consent decree is a decree. And, Judge Sutton, just to answer a question that you asked earlier, if you had a case where this went to judgment and AAP was required by a judgment to install a scrubber, the owners would then be on the hook to pay for it because it would be a scrubber required by applicable law. There are other things that could be required by applicable law that the owners would not be responsible for. Wait, wait, wait. So if there are judgments saying that AAP was in violation of federal law and the remedy is put the scrubber in at the Rockport plant, then they have to pay for that? Yes. Tell me where. Under Section 8D, what it says is that if a scrubber is required by applicable law, then the owners must pay for it. And applicable law is defined very broadly, and it includes decrees, it includes orders. And so while it's true that for other types of things the party did not agree that the owners would be on the hook for it, Judge Griffin, going back to your question, about whether or not this counts as a consent decree and whether this is something that was contemplated at the time, there's no question that paying for a scrubber required by applicable law is something that was anticipated at the time. And the last thing that I would like to mention before sitting down is that the owners have pointed to lots of – a number of different provisions in their brief and during the argument that we heard today. And they say that these other provisions supposedly provide clues that there's an overarching do-no-harm principle and that there's just something wrong here, there's something unfair here. But what they didn't do below in front of Chief Judge Sargas, and what they don't do on this appeal, is say, I have a claim for express breach of contract, and what happened here breaches those provisions. And presumably the reason they don't do that is they know that they could not prevail on those claims. And what you can't do is take a defective claim for breach of express contract provisions and say, I'm going to smuggle it in as an implied covenant claim or as a 601J claim. And as an example, there's not just the prudent utility practice provision. There's also the provision where they got protection. This may not be a good hypothetical, and if it is, just destroy it right away. But just to help me dealing with some intuitions here. Sure. So AAP has several plants. They haven't paid property taxes on several of them, but they've paid on the Rockport plant. There's a dispute. The government comes in saying, hey, we need you to pay this, and we're going to start slapping liens. And AAP says, okay, fine, here's a couple million dollars. You can put some liens on the plants where we haven't paid the real estate taxes. But, by the way, if you let us delay some more of our payments, you can also put a lien on the Rockport plant. And for some reason or another, that infringes the owner's interest just hypothetically. Could they do that with a property tax dispute? Well, two things. I mean, could you do that? Could you do that with a property tax dispute? The answer is not hypothetical. I think that there is a likelihood that the owners would have arguments that could bar it. So to begin with. Why? Why not? Just why not? Okay. Number one, they would have an argument under the prudent utility practice claim that this was not an exercise of reasonable judgment. This is not how you run utilities. This is how you pay your taxes. Well, two things. It's operating your utility. And if in operating your utility you are treating it in a way that's different from the way other plant operators treat their plants, where number two, what you're doing is you're not exercising your judgment reasonably, there's a claim. Number two, taxes. It's highly prudent to make other people pay your taxes for what it's worth. I mean, I don't know why. I don't know what's imprudent about it. It seems very beneficial. Well, in that case, that's a contract right that they gave up. That's in the contract. And so if it's interpreted that way, that's something that they agreed to. And also, remember, taxes is called out for different treatment in permitted lien. Taxes specifically has an additional and different burden to contest, which shows that the parties, when they wanted to, called out taxes for different treatment requiring burdens on AEP. Another protection that they would have is they could point to the provision that says Rockport 1 and Rockport 2 and all other similar plants have to be treated the same. There's a provision in there, Section 8, that says you must treat Rockport 2 like other similar plants, including the ones that you own. That also gives protection against – and the issue is they did not press those as express breach of contract claims. They're not arguing those as express claims now, but they're coming in and they're saying, my gosh, we have no other protections in this contract. They did. They didn't press them. They dismissed one with prejudice. And they can't smuggle these other contract provisions in through 601J in a defective implied covenant claim. Thank you, Your Honors. Thank you. Your Honors, I recognize I used up a good bit of time. I do think it would be helpful to the Court if I at least walk through some of this. These are complicated. You have your rebuttal time here. I still have it good. Thank you. I looked at that red light. I wasn't sure what it signified. Okay, so first of all, we obviously have made a very plain out express contract claim. They violated 6.01J. We couldn't be more plain about that. And while they talk about smuggling things into 601J, 601J is an overarching command that says they can't take action that materially adversely affects the plant. So there's no smuggle. It's a plain out claim. Secondly, this whole talk about prudent utility practice has two problems. One, it's entirely waived. You go through their entire brief, you're not going to see the arguments that they made here today. And two, it's entirely wrong. If we look at Section 8A, when it talks about prudent utility practice, what it says is that the operating efficiency of Unit 2 will be maintained and preserved ordinary where accepted in all material respects in accordance with prudent utility practice. It's not talking about anything like, you know, the answers to the hypotheticals that this Court posed. It's talking about you're not going to run the plant in a way that's going to run it down more than normal wear and tear. You've got to take care of it. But it has nothing to do with this. Secondly, I guess on the they're entirely wrong, is if Clause 10, on which they've based their entire case, really is an affirmative authorization to enter into any and all consent decrees, which is their position, it overrides 601J, then of course it would override 8A as well. They haven't given any reason other than the fact that we're not making an 8A argument as to why it wouldn't overcome that one. And the truth is it overcomes neither. It's just an exception to a prohibition against liens. It's not an affirmative authorization. Third, the underlying government right, and I think they're playing some games with this one. The underlying government right, of course, the government does have a vested and reserved right to enact regulations, et cetera, no doubt about it, to pass laws. And as part of that, of course, they can enforce laws that have been violated. There is no underlying government right, absent a new regulation or a new law, to require us to put a scrubber in, and no one has argued that there is. This plant, other than the consent decree, wouldn't be required to do so. So what created the obligation to put a scrubber in here is not any reserved or vested government right. It's their agreement to settle a lawsuit that they happened to settle through a consent decree. So it's a voluntary action on their part. See, 601J, if it comes up against, if the court were to think that Clause 10 created an affirmative right, 601J is the one that ought to prevail because 601J very clearly says, you can't take action that will have a materially adverse effect. At best, all Clause 10 says is consent decrees are permitted liens. It doesn't say anything about no matter how material. So the right way to resolve it is they each get their due. You can create consent decrees, but if they are materially adverse. What does each get their due mean when they have a judgment? So it works on the side of enforcement vested right that you agree with. It's a massive judgment, and there's no way it doesn't affect the owner's Section 6 rights. What happens then? Okay. Your Honor, if Your Honor's. Your point would be that's not something they did? Is that the point? Well, they didn't. They certainly. Let's separate two things. Number one, if a new law were passed that required a scrubber, that would be a vested government right under 10. And that they're allowed to suffer to exist. So no conflict with 601J. Number two, if there's a judgment that's entered against them. Just why isn't there on the language of 601J a conflict? Why isn't it? If a law is passed? Yeah. Oh, okay. That's easy. I'm sorry, Your Honor. I can do that one. So what 601J says. I'm asking the easy questions, not the hard questions. I'm very happy to hear that. So what 601J says is they can't take an action or admit to take an action that causes a material adverse effect. If the government merely passes a new law or regulation that materially adversely affects the plant, they haven't violated 601J. Even though they follow it. They have no choice but to follow it. And, in fact, that's where. . . They're not taking an action. They're the ones that are adding the scrubbers. Well, first of all, if they actually add a scrubber, if they themselves add a scrubber because applicable law is passed and requires it, we're not going to say that adding the scrubber violates anything. In fact, that's permitted. That's required for them to do under Section 8C. If applicable law requires that they put in a scrubber, then they've got to do it. And there's further provisions in 8D for how we then split the cost. In other words, we took the risk. . . We took regulatory risk here. So did they. That during the period of the lease, the law might change. And if the law changes such that a scrubber is required, they're going to have to put in a scrubber. And then at the end of the lease, we've got to pay them the fair market value of the scrubber. The problem is, in this case, applicable law didn't change. There is no requirement under applicable law for us to put in a scrubber. The only reason a scrubber is required is they went out and made a settlement agreement to that effect. All right. Thank you very much. Of course. If there are no further questions. Thank you for your time. Thank you both for your arguments. The case is submitted. At this point. . .